UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

JAMI JOHNSON,

Plaintiff,

v.

D. PAMPLIN, G. VALDOVINOS, A. MASSIA, M. MORALES, J. HEDDY, O. MORALES, M. ACUNA, J. WILBORN, AND W. SMITH,

Defendants.

Case No.:  17cv560-BAS (BLM)

**REPORT AND RECOMMENDATION FOR ORDER GRANTING  IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

**[ECF No. 25]**

This Report and Recommendation is submitted to United States District Judge Cynthia Bashant pursuant to 28 U.S.C. § 636(b) and Civil Local Rules 72.1(c) and 72.3(f) of the United States District Court for the Southern District of California.  For the following reasons, the Court **RECOMMENDS** that Defendants' motion to dismiss be **GRANTED IN PART AND DENIED IN PART**.

## PROCEDURAL BACKGROUND

On March 20, 2017, Plaintiff Jami Johnson, a state prisoner proceeding *pro se* and *in forma pauperis*, filed a complaint under the Civil Rights Act, 42 U.S.C. § 1983, against Defendants D. Pamplin, G. Valdovinos, A. Massia, M. Morales, J. Heddy, O. Morales, M. Acuna,

J. Wilborn, and W. Smith. ECF No. 1 ("Compl."). On May 22, 2017, Plaintiff filed a motion for appointment of counsel which was denied on May 23, 2017. See ECF Nos. 7 and 8. On July 27, 2017, Defendants filed a motion to dismiss Plaintiff's complaint on the grounds that it "fails to state either a First or Eighth Amendment claim against Defendants" and that under Federal Rules of Civil Procedure ("Fed. R. Civ. P.") 18 and 20, "Plaintiff has improperly joined unrelated claims against separate defendants." ECF No. 25 at 2. That same day, the Court issued an Order Setting Briefing Schedule requiring Plaintiff to file his opposition to the motion on or before August 28, 2017 and Defendants to file their reply on or before September 18, 2017. See ECF No. 26. Plaintiff failed to file an opposition. See Docket.

## COMPLAINT ALLEGATIONS

Because this case comes before the Court on a motion to dismiss, the Court must accept as true all material allegations in the complaint, and must construe the complaint and all reasonable inferences drawn therefrom in the light most favorable to Plaintiff. See Thompson v. Davis, 295 F.3d 890, 895 (9th Cir. 2002).

According to the Complaint, in July 2016, Plaintiff's mother filed a report with the Office of Internal Affairs alleging that Defendants Pamplin and Valdovinos engaged in misconduct and sexual harassment against Plaintiff. Compl. at 5. On August 15, 2016, Defendants Pamplin and Valdovinos approached Plaintiff in his cell with a Rules Violation Report ("RVR") describing Plaintiff's participation in a fight on July 29, 2016. Id. at 5 and Exh. B. Defendants asked Plaintiff to sign the report and after he refused, Defendant Valdovinos ordered Plaintiff to step away from the entrance to his cell. Id. When Plaintiff asked why, Defendant Valdovinos sprayed pepper spray directly into Plaintiff's face. Id. Plaintiff fell to the floor and Defendant Valdovinos stood over his body and continued to spray him with pepper spray, including directly into Plaintiff's mouth. Id. at 6. Defendant Valdovinos then struck Plaintiff on the side of his face, told Plaintiff that "he fucked with the wrong vato! I got your ass," and placed Plaintiff in handcuffs. Id. Defendant Pamplin then placed Plaintiff in leg restraints and stepped on the chain of the restraints causing Plaintiff a great deal of pain in Plaintiff's ankles. Id. As Defendants Pamplin and Valdovinos led Plaintiff down the stairs, they rammed Plaintiff's head

into a door and threw Plaintiff onto the ground outside of the housing unit without provocation. Id. While on the ground, Plaintiff heard several other officers applauding the actions of Defendants Pamplin and Valdovinos.[1] Id. When Defendant W. Smith arrived on the scene, he ordered Defendants Pamplin and Valdovinos to stop what they were doing. Id.

After the incident, Plaintiff underwent a medical examination by R. Russell who asked Plaintiff what happened. Id. at 7. Plaintiff told R. Russell about his experience with Defendants Pamplin and Valdovinos, stated that it was retaliation for the staff complaint filed by his mother, and reported that he had pain in his head, ankles, mouth, and eyes. Id. After the exam, Defendant Smith and two unidentified correctional officers escorted Plaintiff to a holding cell in the C-yard gym. Id. While in the holding cell, Plaintiff told Defendants Smith, J. Wilborn, A. Massia, and M. Morales that Defendants Pamplin and Valdovinos beat him up in retaliation for the report filed by his mother and asked the Defendants to report the abuse and retaliation. Id. The officers did not promptly report the incident as requested and required by California Code of Regulations section 3268.1(a)(1)(d)(2). Id. at 8. Later that day, Defendant Valdovinos approached Plaintiff in the holding cell and promised that if Plaintiff did not report the incident, he would tell Captain Rink to release Plaintiff back to the yard on Thursday. Id. at 8.

Plaintiff eventually was moved from the C-yard holding cell into a holding cell in Administrative Segregation ("Ad-Seg"). Id. There, Plaintiff began to fear that his life was in danger and experienced suicidal thoughts which he expressed to Dr. Saltzman. Id. Dr. Saltzman referred Plaintiff for a mental health assessment in the Correctional Treatment Center ("CTC"). Id. While in CTC, Plaintiff encountered Captain Benyard and informed him of the incident with Defendants Pamplin and Valdovinos. Id. Captain Benyard ordered Officer Brown to retrieve any video footage of the incident and began the process of investigating Plaintiff's allegations. Id. Plaintiff underwent a second medical evaluation to record any visual injuries and a videotaped interview with Defendant J. Wilborn and Sargent Kang. Id. at 8-9. Plaintiff subsequently was

---

[1] Plaintiff could not see all of the officers who were clapping due to the pepper spray that Defendant Valdovinos sprayed in Plaintiff's face. Compl. at 6.

charged with assaulting a peace officer via a falsified RVR which indicated that Plaintiff lunged at Defendant Valdovinos in an aggressive and combative manner when Defendant Valdovinos attempted to present Plaintiff with paperwork in his cell. Id. at 9; see also Exhibit C at 55-62. Plaintiff alleges that he was wrongfully found guilty of this violation and placed in "punitive segregation." Id. at 9.

Plaintiff alleges that he was placed on suicide watch as a result of the events described above which caused him to fear that he would be further harmed by Defendants J. Heddy, O Morales, M. Acuna, or other correctional staff. Id. On August 16, 2016, Plaintiff claims that he was approached by an unidentified correctional officer while on suicide watch and told that he would be moving cells. Id. After Plaintiff explained his situation to the officer, the officer left and did not return. Id. at 10. Defendant O. Morales then came and asked Plaintiff if he wanted to see the nurse, which Plaintiff declined for fear of being subjected to another instance of excessive force. Id. Defendant O. Morales left but returned shortly to tell Plaintiff that the nurse wanted to see him and Plaintiff agreed to go. Id. On the way to the nurse's office, Defendants Heddy and Acuna approached Plaintiff from behind and Defendant Heddy placed a restraint chain on Plaintiff's handcuffs. Id. After Plaintiff met with the nurse, the three Defendants escorted him out of the medical trailer and as Plaintiff was walking down the ramp, Defendants grabbed Plaintiff's arms and the restraint chain with enough force to pull Plaintiff's arms forward and drag him across the gravel and pavement toward his housing unit. Id. at 11. As a result, Plaintiff sustained serious injuries to his knees, shoulders, and right thumb and was denied further medical treatment despite his pleas. Id. Once Plaintiff arrived at the housing unit, Defendant O. Morales kneed Plaintiff in the back as he lay face down on the floor. Id. Plaintiff alleges that this was witnessed by Sergeant Imada who came over and stated that there were cameras around. Id. Defendant Heddy then ordered Plaintiff to get up. Id. Two hours later, Plaintiff was taken to CTC by Captain Benyard and Sergeant Imada then informed Plaintiff that he was being charged with resisting a peace officer. Id. at 12. Plaintiff alleges that this was done to intimidate Plaintiff into keeping silent about what occurred. Id. Lieutenant Skelton interviewed Plaintiff regarding his complaints of excessive force by Defendants Heddy, Acuna,

4

and O. Morales.  Id.

On August 18, 2016, Plaintiff was transferred to the CTC in Wasco State Prison and provided a mental health crisis bed due to his suicidal thoughts.  Id.  After sharing his fears of returning to RJD with his treatment team, Plaintiff was told he would be returning to RJD.  Id.  Plaintiff attempted suicide that day and on August 25, 2016, was seen by Dr. K. Callender.  Id.  On August 29, 2016, Plaintiff was transferred to a new facility from which he filed a 602 complaint against Defendants O. Morales, Heddy, and Acuna.  Id. at 13.

## **LEGAL STANDARD**

Pursuant to Fed. R. Civ. P. 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me-accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To state a claim for a constitutional violation under Section 1983, a plaintiff "must plead facts sufficient to show that [his] claim has substantive plausibility."  Johnson v. City of Shelby, 135 S.Ct. 346, 347 (2014) (citing Bell Atlantic Corp., 550 U.S. at 544; Ashcroft, 556 U.S. at 662).

To state a claim under § 1983, a plaintiff must allege facts sufficient to show that (1) a person acting under color of state law committed the conduct at issue, and (2) the conduct deprived the plaintiff of some "rights, privileges, or immunities" protected by the Constitution of the laws of the United States.  42 U.S.C. § 1983.  To prevail on a § 1983 claim, "a plaintiff must demonstrate that he suffered a specific injury as a result of specific conduct of a defendant and show an affirmative link between the injury and the conduct of the defendant." Harris v. Schriro, 652 F. Supp. 2d 1024, 1034 (D. Ariz. 2009) (citation omitted).  A particular defendant is liable under § 1983 only when the plaintiff proves he participated in the alleged violation.  Id.

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the plaintiff's claims. See Fed. R. Civ. P. 12(b)(6).  The issue is not whether the plaintiff ultimately will prevail, but whether he has properly stated a claim upon which relief could be granted.  Jackson v. Carey, 353 F.3d 750, 755 (9th Cir. 2003).  In order to survive a motion to dismiss, the plaintiff must

set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). If the facts alleged in the complaint are "merely consistent with" the defendant's liability, the plaintiff has not satisfied the plausibility standard. Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557). Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

When a plaintiff appears *pro se*, the court must be careful to construe the pleadings liberally and to afford the plaintiff any benefit of the doubt. See Erickson v. Pardus, 551 U.S. 89, 94 (2007); Thompson v. Davis, 295 F.3d 890, 895 (9th Cir. 2002). This rule of liberal construction is "particularly important" in civil rights cases. Hendon v. Ramsey, 528 F. Supp. 2d 1058, 1063 (S.D. Cal. 2007) (citing Ferdik v. Bonzelet, 963 F.2d 1258, 1261 (9th Cir. 1992)); see also Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (stating that because "Iqbal incorporated the Twombly pleading standard and Twombly did not alter courts' treatment of pro se filings; accordingly we continue to construe pro se filings liberally . . . ." This is particularly important where the petitioner is a *pro se* prisoner litigant in a civil matter). When giving liberal construction to a *pro se* civil rights complaint, however, the court is not permitted to "supply essential elements of the claim[] that were not initially pled." Easter v. CDC, 694 F. Supp. 2d 1177, 1183 (S.D. Cal. 2010) (quoting Ivey v. Bd. of Regents of the Univ. of Alaska, 673 F.2d 266, 268 (9th Cir. 1982)). "Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss." Id. (quoting Ivey, 673 F.2d at 268).

The court should allow a *pro se* plaintiff leave to amend his or her complaint, "unless the pleading could not possibly be cured by the allegation of other facts." Ramirez v. Galaza, 334 F.3d 850, 861 (9th Cir. 2003) (internal quotation marks and citations omitted). Moreover, "before dismissing a pro se complaint the district court must provide the litigant with notice of the deficiencies in his complaint in order to ensure that the litigant uses the opportunity to amend effectively." Ferdik, 963 F.2d at 1261.

**DISCUSSION**

Plaintiff alleges that he suffered cruel and unusual punishment and was retaliated against by prison officials in violation of his First and Eighth Amendment rights. Compl. at 3. Plaintiff seeks injunctive relief, compensatory damages, punitive damages, special damages, attorneys' fees, and costs of suit. Id. at 15.

Defendants move to dismiss all of Plaintiff's claims pursuant to Fed. R. Civ. P. 18 and 20 because the complaint improperly asserts two different claims based on two different events. ECF No. 25-1 ("MTD") at 10-11. Defendants move to dismiss Plaintiff's Eighth Amendment claims against Defendants O. Morales, Heddy, and Acuna under the "favorable termination doctrine." Id. at 12-14. Defendants move to dismiss Plaintiff's Eighth Amendment claims against Defendants Smith, Wilborn, Massia, and M. Morales for failure to state a claim. Id. at 15-16. Defendants move to dismiss all of Plaintiff's claims based on the allegation that the officer filed a false report or made false allegations against Plaintiff. Id. at 16. Finally, Defendants move to dismiss all claims made against Defendants in their official capacity. Id. at 16-17.

### A. Improper Joinder

Fed. R. Civ. P 18 states that "[a] party asserting a claim, counterclaim, crossclaim, or third-party claim may join, as independent or alternative claims, as many claims as it has against an opposing party." Fed. R. Civ. P. 18(a). Fed. R. Civ. P 20 states that Defendants may be joined in one action if "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and [] any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P 20(a)(2)(A-B).

Defendants argue that Plaintiff's complaint contains two separate claims based on different events against different Defendants and that allowing Plaintiff to proceed would "skirt[] the [Prison Litigation Reform Act], in that he will only obtain one 'strike' against him should this particular case be considered frivolous despite the fact that he will truly be litigating multiple unrelated issues at the same time." MTD at 10-11. Defendants contend that because Plaintiff's complaint violates Fed. R. Civ. P. 18 and 20, it must be dismissed. Id. Plaintiff did not oppose

Defendants' motion and, therefore, has not addressed this issue.  See Docket.

The cases cited by Defendants in support of their position are distinguishable from the instant matter.  For example, in Shehee, the Court found joinder was improper because the plaintiff was challenging two separate and unrelated claims of excessive force against two different defendants arising from incidents that took place more than two years apart.  Shehee v. Trumbly, 2015 WL 6706498, at *1-3 (E.D. Cal. Nov. 3, 2015).  Similarly, in Bracken, Plaintiff alleged excessive force claims stemming from incidents that occurred on September 25, 2015, January 8, 2016, and February 25, 2016 and stated different reasons for the alleged uses of excessive force.  Bracken v. Duran, 2017 WL 2654838, at *1 (E.D. Cal. June 20, 2017).  That led the court to conclude that "[t]hough Plaintiff has stated two cognizable claims for excessive force, the Court is unable to discern any relation between his claims to allow them to proceed in a single action."  Id. at 1.

Here, although Plaintiff's claims are against two different groups of Defendants for two different assaults, the alleged assaults occurred within twenty four hours of each other and were at the hands of Defendants who work together.  While Plaintiff has not explicitly stated that the assaults were linked, it is not clear that they were unrelated and the Court will construe the pleadings liberally giving the *pro se* Plaintiff the benefit of the doubt.  Accordingly, the Court **RECOMMENDS** that Defendants' motion to dismiss Plaintiff's action pursuant to Fed. R. Civ. P. 18 and 20 be **DENIED**.

### B.    Failure to State A Claim for Eighth Amendment Violations

Defendants argue that Plaintiff has not stated a claim for an Eighth Amendment violation against Defendants Wilborn, Smith, Massia, or M. Morales because he does not allege facts indicating that they were personally involved in the alleged assaults or facts supporting *respondeat superior* liability for Defendants Smith or Wilborn.  MTD at 15.  Defendants further contend that even if Plaintiff's allegations that Defendants violated regulations and/or filed false reports were true, the alleged conduct is not a constitutional violation and Plaintiff therefore has failed to state a claim based on that conduct.  Id. at 15-16.

///

1.   <u>Direct Liability</u>

The Eighth Amendment prohibits prison officials from using excessive physical force against inmates. <u>Farmer v. Brennan</u>, 511 U.S. 825, 832, 114 S.Ct. 1970 (1994). The inquiry is not whether the prisoner suffered a certain level of injury, but "'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" <u>Wilkins v. Gaddy</u>, 559 U.S. 34, 37 (2010) (citation omitted); <u>Hamilton v. Brown</u>, 630 F.3d 889, 897 (9th Cir. 2011); <u>see</u> <u>Farmer</u>, 511 U.S. at 835–36 (noting that a plaintiff must allege that the defendant used force knowing that harm would occur). Courts examine the following five factors to determine whether a plaintiff has satisfied the malicious and sadistic standard: (1) the inmate's injury; (2) the need for the use of force; (3) "'the relationship between that need and the amount of force used; (4) the threat reasonably perceived by the [defendant]; and (5) any efforts made to temper the severity of a forceful response.'" <u>Martinez v. Stanford</u>, 323 F.3d 1178, 1184 (9th Cir.2003) (quoting <u>Hudson v. McMillian</u>, 503 U.S. 1, 7 (1992).); <u>see</u> <u>Whitley v. Albers</u>, 475 U.S. 312, 321 (1986); <u>Madrid v. Gomez</u>, 889 F. Supp. 1146, 1247 (N.D. Cal. 1995). "The absence of serious injury is a relevant, but not dispositive, additional factor to be considered in the subjective analysis." <u>Nunez v. Ramirez</u>, 2011 WL 7096611, at *7 (S.D. Cal. Nov. 14, 2011) (citing <u>Hudson</u>, 503 U.S. at 7). "[T]he use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury." <u>Hudson</u>, 503 U.S. at 4. "Injury and force, however, are only imperfectly correlated, and it is the latter that ultimately counts. An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." <u>Wilkins</u>, 559 U.S. at 38.

In his complaint, Plaintiff alleges that Defendant Smith arrived at the location where Defendants Pamplin and Valdovinos were attacking Plaintiff and ordered them to stop.  Compl. at 6-7.  Plaintiff further alleges that the four Defendants escorted him at various times, that Defendant Wilborn interviewed him, and that he told all four Defendants about the retaliatory assault and asked them to report it.  <u>Id.</u> at 7-9.  Plaintiff, however, does not allege that Defendants Wilborn, Smith, Massia or M. Morales were personally involved in either of the

alleged assaults.  Compl.  Nor does Plaintiff allege that Defendants Wilborn, Smith, Massia or M. Morales were present when the assaults took place or that they were aware of either assault prior to it taking place such that they could have prevented the assault from occurring.  Id. Accordingly, Plaintiff has failed to state a claim that Defendants Wilborn, Smith, Massia and M. Morales used excessive force against Plaintiff under the direct participation theory of liability.

### 2.    Supervisory Liability

Government officials are not liable under § 1983 for their subordinates' unconstitutional conduct based on *respondeat superior* or another theory of vicarious liability, and plaintiff is required to plead that "each Government-official defendant, through his own individual actions, has violated the Constitution."  See Iqbal, 556 U.S. at 676 (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978) (finding no vicarious liability for a "municipal person" under 42 U.S.C. § 1983)). A supervisor may be individually liable under § 1983 "if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation."  Starr v. Baca, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989)). To be held liable, a supervisor need not be physically present when the alleged constitutional injury occurs nor be "directly and personally involved in the same way as are the individual officers who are on the scene inflicting constitutional injury."  Starr, 652 F.3d at 1205 (citation omitted).  Rather, the requisite causal connection is established when a supervisor "set[s] in motion a series of acts by others," or "knowingly refus[es] to terminate a series of acts by others which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury."  Id. at 1207-08 (citation omitted).  A supervisor may also be held liable for his "own culpable action or inaction in the training, supervision, or control of his subordinates, acquiescence in the constitutional deprivation," or "conduct that showed a reckless or callous indifference to the rights of others."  Id. at 1205 (citation omitted).  Additionally, a supervisor may be held liable if he implements a "policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation."  Hansen, 885 F.2d at 646 (internal quotation marks and citation omitted).

17cv560-BAS (BLM)

Plaintiff's complaint does not allege that he is suing Defendants Smith or Wilborn under a theory of supervisory liability but it does state in the "Parties" section that Defendants Smith and Wilborn are Sergeants. Compl. at 4. To the extent Plaintiff intended to allege supervisory liability against Defendants Smith and Wilborn, he has failed to do so.

Plaintiff alleges that Defendant Smith arrived after the August 15, 2016 assault occurred, ordered Defendants Valdovinos and Pamplin to stop what they were doing, and later escorted Plaintiff to the C-Yard holding cells. Id. at 6-8. Plaintiff alleges that he told both Defendants Smith and Wilborn that Defendants Valdovinos and Pamplin used excessive force against him in retaliation for the Internal Affairs complaint filed by his mother and asked them to report the excessive force. Id. at 7. The only additional facts alleged against Defendant Wilborn are that he escorted Plaintiff from C-yard to Ad-Seg and later interviewed Plaintiff about the alleged assaults. Id. at 8-9. Plaintiff also states that Defendant Wilborn took possession of the interview videotape and placed it into evidence, but the tape was subsequently lost. Id. at 9. Plaintiff does not allege that Defendant Wilborn, or any of the other Defendants caused the tape to be lost. Id.

As such, Plaintiff does not assert any facts establishing a causal connection between either defendant's actions and the alleged assaults. Id. The asserted facts also do not support an inference that either defendant "set in motion" acts that resulted in others assaulting Plaintiff or that either officer refused to terminate acts that he knew would cause others to assault Plaintiff. See Starr, 652 F.3d at 1207-08. Similarly, Plaintiff does not allege any training or supervision by Defendant Smith or Defendant Wilborn of his subordinates that indicated an acquiescence in the alleged constitutional deprivation. Id. Finally, Plaintiff has not pled any facts indicating that either defendant implemented a policy that was the "moving force" behind the alleged assault or a policy that was constitutionally deficient and in and of itself a "repudiation of constitutional rights." Hansen, 885 F.2d at 646 (internal quotation marks and citation omitted); see also Compl. Accordingly, Plaintiff has not alleged facts supporting a claim for unlawful excessive force against either Defendant Smith or Defendant Wilborn based upon supervisory liability.

### 3.    Violation of California Code of Regulations

In his complaint, Plaintiff alleges that Defendants Wilborn, Smith, Massia and M. Morales "failed to report the use of force which constitutes cruel and unusual punishment in violation of the Eighth Amendment of the United States Constitution." Compl. at 14. Plaintiff explains that he told these four Defendants that Defendants Valdovinos and Pamplin had used excessive force against him in retaliation for an Internal Affairs complaint filed by Plaintiff's mother. Id. at 7. Plaintiff asserts that he asked the four officers to report the excessive use of force and that they failed to do so, which violated the California Code of Regulations, Cal. Code Regs. tit. 15, § 3268.1 (a)(d)(1)).[2] Id.

Defendants correctly assert that a constitutional violation cannot be premised solely on an alleged violation of a regulation. MTD at 15; see Hamilton v. Dep't of Corr. & Rehab. Med., 2016 WL 2928067, at *3 (E. D. Cal. May 19, 2016) (stating that "absent any constitutional violation, plaintiff's claim for violation of regulations contained in Title 15 of the California Code of Regulations also fails, because there is no independent cause of action for violation of those regulations."). As discussed above, Plaintiff has not alleged facts supporting a constitutional violation against Defendants Smith, Wilborn, Massia or M. Morales so even if they were required to report the alleged use of force and failed to do so, the failure does not state a claim for a violation of Section 1983. See Davis v. Powell, 901 F. Supp. 2d 1196, 1211 (S.D. Cal. 2012) (finding that "Plaintiff cannot assert an independent cause of action based on the purported violation of section 3190(i) of the California Code of Regulations. The existence of regulations such as these governing the conduct of prison employees does not necessarily entitle Plaintiff to sue civilly to enforce the regulations or to sue for damages based on

_____

[2] Cal. Code Regs. tit. 15, § 3268.1 (a) states that "[e]very staff use of force is an incident that shall be reported." Subsection (1) requires that "[a]ny employee who uses force or observes a staff use of force shall report it to a supervisor as soon as practical and submit the appropriate documents, prior to being relieved from duty." Subsection (d)(1) provides that "[a] video recording of the inmate is also required following a use of force occurrence resulting in SBI or GBI to the inmate…."

the violation of the regulations.") (citing K'napp v. Adams, 2009 WL 1292347, at *4, 2009 U.S. Dist. LEXIS 38682, at *12 (E.D. Cal. May 7, 2009); Allen v. Kernan, 2017 WL 4518489, at *9 (S.D. Cal. Oct. 10, 2017) (stating that "there is no independent cause of action under § 1983 for a violation of Title 15 of the California Code of Regulations) (citing Chappell v. Newbarth, 2009 WL 1211372, at *9 (E.D. Cal. May 1, 2009) (holding that there is no private right of action under Title 15 of the California Code of Regulations) and Parra v. Hernandez, 2009 WL 3818376, at *2, 8 (S.D. Cal. Nov. 13, 2009) (same)). Accordingly, the allegation that these four officers failed to report the alleged assault after Plaintiff asked them to do so, does not state a claim for cruel and unusual punishment.

4.   False Report Claim

In his complaint, Plaintiff states "[t]he actions of defendants D. Pamplin, G. Valdovinos, M. Morales, O. Morales, J. Heddy and M. Acuna in filing a false report and making false statements during a criminal investigation were done maliciously, sadistically and intentionally, and for the sole purpose of subjecting Plaintiff to punitive segregation and criminal prosecution by way of defrauding the court, which constitutes cruel and unusual punishment in violation of the Eighth Amendment of the United States Constitution."  Compl. at 14.  Plaintiff does not provide any additional facts regarding the alleged false statements or reports.  See Compl.

Even if Plaintiff's allegations are true and any or all of the Defendants submitted false post-incident reports, the alleged actions do not rise to the level of an Eighth Amendment violation as the false reports did not cause the alleged assaults.  See Villegas v. Schulteis, 2009 WL 3157519, at *5–6 (E.D. Cal. Sept. 28, 2009) (finding (1) allegations that a correctional officer lied in her report about where she was during plaintiff's attack were not sufficient for plaintiff's Eighth Amendment claim as the officer was "only liable for her actions or inactions that could be said to have caused the attack to happen," (2) that while a correctional officer's failure to submit an accurate report and to attempt to cover up the assault to protect his fellow officer was wrongful, it did not rise to the level of an Eighth Amendment violation as the report came after the attack occurred, and (3) allegations that correctional officers failed to fully document plaintiff's injuries insufficient to state an Eighth Amendment claim because the failure occurred

17cv560-BAS (BLM)

after the alleged assault and, therefore, could not have caused or contributed to the assault and that causing the participants in the attack to avoid punishment was not enough to state a claim); see also Ragsdale v. Flores, 2015 WL6164908, at *6 (C.D. Cal. Sept. 11, 2015) (finding that defendant officer who allegedly participated in a cover up by filing a false report about the alleged assault failed to state a cognizable claim and noting that "[p]reparing a false report about an incident *after* it occurred cannot subject that individual to liability for the force used *during* the incident") (emphasis in original); and Poe v. Huckabay, 2010 WL 1663141, at *6 (E.D. Cal. Apr. 22, 2010) (denying plaintiff's claim that defendants violated his rights under the Eighth Amendment by filing false reports about his assault and noting that "[t]he filing of the false reports occurred after the attack. Therefore, the false reports cannot be said to have caused or contributed to the unconstitutional use of excessive force."). Because any reports were prepared after the alleged use of excessive force ended, Plaintiff cannot state a claim against Defendants Pamplin, Valdovinos, M. Morales, O. Morales, Heddy, and Acuna for the unconstitutional use of excessive force, even if the reports they authored contained material false statements.

This is true even if Plaintiff's discipline was the result of the allegedly false reports. See Rios v. Paramo, 2016 WL 8731085, at *35 (S.D. Cal. July 15, 2016) ("Insofar as Plaintiff challenges the issuance of the RVR on grounds that it included false information, or the allegedly false statements of Defendants Cortez and Jones in support of the RVR, he cannot state a claim."); see also Solomon v. Meyer, 2014 WL 294576, at *2 (N.D. Cal. Jan. 27, 2014) (stating that "there is no due process right to be free from false disciplinary charges. 'A prisoner has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest.'") (quoting Chavira v. Rankin, 2012 WL 5914913, *1 (N.D. Cal. 2012) (citing Sprouse v. Babcock, 870 F.2d 450, 452 (8th Cir. 1989); Freeman v. Rideout, 808 F.2d 949, 951 (2d Cir. 1986)); and Johnson v. Felker, 2013 WL 6243280, at *6 (E.D. Cal. Dec. 3, 2013) ("Prisoners have no constitutionally guaranteed right to be free from false accusations of misconduct, so the mere falsification of a [rules violation] report does not give rise to a claim under section 1983."). Accordingly, Plaintiff's claim that the

17cv560-BAS (BLM)

officers prepared false reports does not support a claim for the use of excessive force against Defendants Wilborn, Smith, Massia and M. Morales.[3]

     5.   <u>Conclusion</u>

     As set forth above, Plaintiff does not allege facts indicating that Defendants Wilborn, Smith, Massia or M. Morales used excessive force directly against Plaintiff or that Defendants Wilborn or Smith engaged in any conduct that would support a claim for supervisory liability.  In fact, Plaintiff admits that these defendants were not present for or connected to either of the alleged assaults and that Defendant Smith yelled at Defendants Valdovinos and Pamplin to stop what they were doing.  Moreover, Plaintiff's claims that any or all of these defendants failed to report the alleged use of excessive force and/or filed false reports after the alleged assault are legally insufficient to establish constitutional liability for the use of excessive force.  Because the alleged facts and the evidence attached to the complaint do not support a violation of Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment by these Defendants and because it does not appear that any additional facts can be alleged that would support liability, the Court **RECOMMENDS** that Defendants' motion to dismiss Plaintiff's Eighth Amendment claim against Defendants Wilborn, Smith, Massia and M. Morales be **GRANTED WITHOUT LEAVE TO AMEND**.  <u>See</u> <u>Ramirez v. Galaza</u>, 334 F.3d 850, 861 (9th Cir. 2003) (court may dismiss without leave to amend if the pleading cannot be cured by the addition of other facts).

------------------------

[3] Filing a false report can state a claim upon which relief can be granted if the false report was prepared in retaliation for the exercise of a constitutional right or a prisoner is not given procedural due process in the hearing on the disciplinary charge resulting from the false report. <u>Koch</u>, 2006 WL 403818, at *5; <u>see</u> <u>also</u> <u>Ragsdale</u>, 2015 WL 6164908, at *6.  Here, Plaintiff has not alleged such facts.  Instead, Plaintiff alleges that the false reports and statements were filed "for the sole purpose of subjecting Plaintiff to punitive segregation and criminal prosecution by way of defrauding the court which constitutes cruel and unusual punishment."  Compl. at 14.  The Court recognizes that Plaintiff has alleged retaliation claims against Defendants Valdovinos and Pamplin but Defendants have not moved to dismiss the claims against these two defendants so the Court does not address the adequacy of the claims against Defendants Valdovinos and Pamplin.

17cv560-BAS (BLM)

### C.   **Heck v. Humphrey Doctrine**

Defendants move to dismiss Plaintiff's claims of excessive force against Defendants Heddy, O. Morales, and Acuna on the basis that they are barred by the "favorable termination doctrine" announced in Heck v. Humphrey, 512 U.S. 477 (1994).  MTD at 12-14.  Defendants argue that the Heck doctrine prohibits Plaintiff's claims because Plaintiff was found guilty of resisting a peace officer based upon the same altercation with Defendants Heddy, O. Morales, and Acuna on August 16, 2016 that is the basis of Plaintiff's excessive force claims against these officers.  Id.  Defendants reason that the finding of guilt necessarily included a determination that the officers were engaged in a "lawful performance of his/her duties" and a finding that the officers used excessive force would negate the original finding.  Id. at 13.  Defendants further argue that the prison finding necessarily included a determination that "Plaintiff instigated the incident" and that a finding that Defendants "acted 'without provocation'" as alleged by Plaintiff would violate the prison's finding.  Id. at 14.

> The Supreme Court announced the "favorable termination doctrine" by holding that in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness could render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a writ of habeas corpus.

Heck, 512 U.S. at 486-87.  "Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated."  Id. at 487.  The favorable termination doctrine has been extended to prison disciplinary actions involving a loss of good-time credits.  See Edwards v. Balisok, 520 U.S. 641, 643-44 (1997).  However, the doctrine does not prohibit a civil rights claim if the claim does not necessarily implicate the underlying disciplinary action.  See Sevilla v. Maldonado, 2017 WL 4325343, at *2 (S.D. Cal. Sept. 29, 2017) (citing Muhammad v. Close, 540 U.S. 749, 754-55 (2004)).

Plaintiff asserts a claim for unconstitutional use of excessive force against Defendants O. Morales, J. Heddy and M. Acuna. Compl. at 10-12, 14. Plaintiff alleges that on August 16, 2016, he "agreed to cuff-up and [be] escorted by Defendant O. Morales for the sole purpose of being seen by the medical staff." Compl. at 10. Plaintiff alleges that while cuffed and escorted by Defendants O. Morales, Defendants J. Heddy and M. Acuna approached him and J. Heddy placed a triangle restraint chain on Plaintiff's handcuffs. Id. The three defendants then escorted Plaintiff to the medical trailer, where he was seen by medical staff. Id. at 10-11. Plaintiff alleges that as he was escorted back to his cell by the three defendants, they "without provocation subjected Plaintiff to the unnecessary use of excessive force by grabbing Plaintiff's arms and the triangle restraint chain that was attached to the handcuffs with such force that Plaintiff's arms were pulled forward over his shoulders and head as the said three defendants dragged the Plaintiff across the concrete gravel and pavement" towards his housing cell. Id. at 11. Plaintiff alleges that once in the cell, Defendant O. Morales "with great force kneed Plaintiff in his back while he was still in restraints laying face down." Id. Plaintiff asserts that he subsequently was taken to CTC where Sgt. Imada told him that he was being charged with resisting a peace officer in the performance of his duties and read Plaintiff his rights. Id. at 11-12.

Plaintiff submitted a number of documents as exhibits to his Complaint, which the Court will consider.[4] A RVR charging Plaintiff with "Willfully resisting a Peace Officer in the performance of duty" was issued on August 16, 2016. Compl., Exh. E, ECF No. 1-3 at 4-8. The RVR alleges

---

[4] A "court may 'consider certain materials–documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice–without converting the motion to dismiss into a motion for summary judgment.'" Givens v. Miller, 2017 WL 840658, at *2 (S.D. Cal. Mar. 3, 2017) (quoting United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003)). "Materials submitted as part of the complaint are not considered 'outside' the complaint and may be considered" on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Id. (quoting Butler v. Los Angeles County, 617 F. Supp. 2d 994, 999 (C.D. Cal. 2008) (citing Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001); and Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1555 n. 19 (9th Cir. 1990) (material properly submitted as part of the complaint may be considered)).

17cv560-BAS (BLM)

that while Defendants Heddy and O. Morales were escorting Plaintiff from the medical trailer to ASU 6, Plaintiff became agitated and began yelling and swearing at the officers.  Id. at 4.  The officers tried to calm him down but Plaintiff refused, began to twist his body and swing his arms in an attempt to break free from the officers' hold, and ultimately succeeded in breaking free and then fell on his face.  Id.  The officers ordered Plaintiff to stand up but he refused to do so and yelled obscenities at the officers.  Id.  The RVR states "Officer Morales and I tried to talk to [Plaintiff] as we continued to with the escort as he was trying to drag his body and tell him that he had nothing to worry about in ASU 6."  Id.  The officers then decided to carry Plaintiff but Plaintiff continued to struggle and yell "man down."  Id.  Plaintiff eventually stopped struggling but he refused to enter his new cell and sat on the floor in front of it.  Id.  Plaintiff repeatedly stated that he did not want to move to ASU 6 and the officers explained that he had to do so. Id.  Despite repeated orders by the officers to get up and walk into the cell, Plaintiff sat on the floor for approximately 2.5 hours.  Id.

On September 28, 2016, Lieutenant Cortez conducted a hearing on the RVR.  Id. at 58. Plaintiff was present and stated "I never resisted.  All I did is ask for a Sergeant. I wasn't supposed to move from Building Seven to Building Six. A Lieutenant and Mental Health Captain told me I wasn't going to move from Building Seven. All I asked is to speak to a Sergeant."  Id. at 62.  Lieutenant Cortez considered Plaintiff's mental health disorder and the Mental Health Assessment submitted by the Clinical Staff and determined that Plaintiff's "mental illness did not contribute to his behavior at the time of the violation."  Id.  Lieutenant Cortez also considered the reports submitted by Lieutenant Soto, Sergeant Imada, Officer Acuna, Officer Heddy, and Officer O. Morales.  Id. at 62-63.  At the conclusion of the hearing, Lieutenant Cortez found Plaintiff guilty of resisting a peace officer and imposed a loss of 90 days of good-time credit.  Id. at 65.

The favorable termination doctrine prevents a plaintiff from bringing excessive force claims pursuant to 42 U.S.C. § 1983 if the claim would call into question of the validity of factual disputes which necessarily had already been resolved against the plaintiff.  See Cunningham v. Gates, 312 F.3d 1148 (9th Cir. 2002).  However, excessive force allegations are not barred by

17cv560-BAS (BLM)

the Heck doctrine when the alleged excessive force occurred after the conduct that resulted in the conviction.  See Smith v. City of Hemet, 394 F.3d 689 (9th Cir. 2005) (finding that plaintiff's §1983 excessive force action was not barred "because the excessive force may have been employed against him subsequent to the time he engaged in the conduct that constituted the basis for his conviction" and that under the circumstances plaintiff's actions "neither demonstrated nor necessarily implied the invalidity of his conviction."); see also Sanford v. Motts, 258 F.3d 1117, 1120 (9th Cir. 2001) ( "[I]f [the officer] used excessive force subsequent to the time Sanford interfered with [the officer's] duty, success in her section 1983 claim will not invalidate her conviction.  Heck is no bar."); Hooper v. County of San Diego, 629 F.3d 1127, 1134 (9th Cir. 2011) (holding that a conviction for resisting arrest under Cal.Penal Code § 148(a)(1) does not "bar a § 1983 claim for excessive force under Heck [if] the conviction and the § 1983 claim are based on different actions during 'one continuous transaction'").  Utilizing a similar analysis, courts also have held that an inmate can state a constitutional claim for excessive force even if he was convicted of resisting a peace officer if he alleges the force was malicious, sadistic or unreasonable and intended to cause harm as opposed to a good-faith effort to restore discipline.  See Sevilla, 2017 WL 4325343, at *5 ("although Sevilla was found to have resisted a peace officer, a fact finder could find that the force used to quell the resistance was applied, not in a good faith effort to maintain or restore discipline, but maliciously and sadistically to cause harm."); see also Martinez v. City of Alburquerque, 184 F.3d 1123, 1127 (10th Cir. 1999) ("The state court's finding that Martinez resisted a lawful arrest ... may coexist with a finding that the police officers used excessive force to subdue him.").

Here, Plaintiff could have resisted a peace officer and still suffered excessive force at the hands of Defendants Heddy, O. Morales, and Acuna.  As with the plaintiffs in Smith and Sevilla, the excessive force that Plaintiff alleges may have occurred before or after Plaintiff resisted the peace officer in the performance of his duties or the force used to prevent Plaintiff from resisting may have been maliciously or sadistically performed in a way intended to cause harm as opposed to a good-faith effort to restore discipline.  See Sevilla, 2017 WL 4325343, at *5 ("although Sevilla was found to have resisted a peace officer, a fact finder could find that the force used to

quell the resistance was applied, not in a good faith effort to maintain or restore discipline, but maliciously and sadistically to cause harm."); see also Sevilla v. A. Maldonado, 2017 WL 3288562, at *6 (S.D. Cal. Aug. 1, 2017) (citing VanGlider v. Baker, 435 F.3d 689, 692 (7th Cir. 2006) (noting that a plaintiff alleging excessive force "does not collaterally attack his conviction [or] deny that he resisted ... Rather, [plaintiff] claims that he suffered unnecessary injuries because [the] response to his resistance ... was not ... objectively reasonable.") and Martinez v. City of Alburquerque, 184 F.3d 1123, 1127 (10th Cir. 1999) ("The state court's finding that Martinez resisted a lawful arrest ... may coexist with a finding that the police officers used excessive force to subdue him.").   Accordingly, the Court **RECOMMENDS** that Defendants' motion to dismiss Plaintiff's claims of excessive force against Defendants Heddy, O. Morales, and M. Acuna pursuant to the Heck doctrine be **DENIED**.

### D. **Official Capacity and Injunctive Relief**

Plaintiff has sued Defendants for monetary and injunctive relief in both their individual and official capacities.  Compl. at 4-5, 14-15.  Plaintiff does not provide any information on the type of injunctive relief that he is seeking.  Id.  Defendants contend that Plaintiff cannot state a claim for damages against Defendants in their official capacities. MTD at 16.  Defendants further contend that Plaintiff lacks standing to seek injunctive relief because he is no longer being housed with CDCR.  Id. at 17.  Defendants request that the claims against Defendants in their official capacities be dismissed with prejudice.  Id.

"The Eleventh Amendment bars actions for damages against state officials who are sued in their official capacities in federal court."  Dittman v. California, 191 F.3d 1020, 1026 (9th Cir. 1999); see also Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989) (a suit for damages against a state official in his or her official capacity is really a suit against the state itself, which is prohibited by the Eleventh Amendment).  Thus, a state official is not subject to suit under 42 U.S.C. § 1983 unless the state consents or Congress has abrogated the state's Eleventh Amendment immunity.  Will, 491 U.S. at 66, 71 n.10.  The State of California has not consented to be sued in federal court for allegations arising under Section 1983.  Brown v. Cal. Dep't of Corr., 554 F.3d 747, 752 (9th Cir. 2009) (citing Dittman, 191 F.3d at 1025-26).  Therefore, the

district court has no jurisdiction over this claim and **RECOMMENDS** that Defendants' motion to dismiss Plaintiff's claims for monetary damages against Defendants in their official capacity be **GRANTED WITHOUT LEAVE TO AMEND**.  Dittman, 191 F.3d at 1026 ("The Eleventh Amendment bars actions for damages against officials who are sued in their official capacities in federal court"); see also Ramirez, 334 F.3d at 861 (court may dismiss without leave to amend if the pleading cannot be cured by the addition of other facts).

The Eleventh Amendment does permit "suits for prospective injunctive relief against state officials acting in violation of federal law."  Frew ex rel. Frew v. Hawkins, 540 U.S. 431, 437 (2004).  However, injunctive relief is available only if there is a "real or immediate threat that the plaintiff will be wronged again."  City of Los Angeles v. Lyons, 461 U.S. 95, 111 (1983). Accordingly, injunctive relief is appropriate only when "irreparable injury" is threatened.  Id.  To establish irreparable injury, a plaintiff must demonstrate a "real or immediate threat that the[y] will be wronged again-a 'likelihood of substantial and immediate irreparable injury."  Id.  "A state law enforcement agency may be enjoined from committing constitutional violations where there is proof that officers within the agency have engaged in a persistent pattern of misconduct." Gomez v. Vernon, 255 F.3d 1118, 1129 (9th Cir. 2001) (quoting Thomas v. County of Los Angeles, 978 F.2d 504, 508 (9th Cir. 1992)); and Walters v. Reno, 145 F.3d 1032, 1048 (9th Cir. 1998) ("Injunctive relief is appropriate in cases involving challenges to government policies resulting in a pattern of constitutional violations").

Here, Plaintiff has not identified the specific injunctive relief he is seeking and has failed to demonstrate that there is a "real or immediate threat" that he will be harmed again or that there is a "likelihood of substantial and immediate irreparable injury," especially since he is no longer being housed with CDCR.  Los Angeles, 461 U.S. at 111; see also Compl. at 12-13; MTD at 17; ECF No. 20 (Plaintiff's notice of address change designating a non-prison address effective 6/12/17).  "When an inmate is released from prison or transferred to another prison and there is no reasonable expectation nor demonstrated probability that he will again be subjected to the prison conditions from which he seeks injunctive relief, the claim for injunctive relief should be dismissed as moot."  Cockcroft v. Kirkland, 548 F. Supp. 2d 767, 778 (N.D. Cal. 2008) (finding

17cv560-BAS (BLM)

that plaintiff's transfer to another prison mooted his request for injunctive relief) (citing <u>Dilley v. Gunn</u>, 64 F.3d 1365, 1368–69 (9th Cir. 1995); <u>Darring v. Kincheloe</u>, 783 F.2d 874, 876–77 (9th Cir. 1986)); <u>see</u> <u>also</u> <u>Padilla v. Nevada Dep't of Corr.</u>, 510 F. App'x 629 at 630 (9th Cir. 2013) (finding plaintiff's claims for injunctive relief from the conditions of his confinement at Ely State Prison mooted when plaintiff was transferred to Warm Springs Correctional Center). Additionally, Plaintiff has not alleged a persistent pattern of misconduct by officials that would support any type of injunction. Accordingly, the Court **RECOMMENDS** that Defendants' motion to dismiss Plaintiff's request for injunctive relief be **GRANTED WITHOUT LEAVE TO AMEND**.

## F.   <u>Summary</u>

The Court **RECOMMENDS** that Defendants' motion to dismiss Plaintiff's

- Claims pursuant to Fed. R. Civ. P. 18 and 20 be **DENIED**.
- Eighth Amendment claim against Defendants Wilborn, Smith, Massia and M. Morales be **GRANTED WITHOUT LEAVE TO AMEND**.
- Eighth Amendment claim against Defendants Heddy, O. Morales, and Acuna pursuant to <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994) be **DENIED**.
- Claims for monetary damages against Defendants in their official capacity be **GRANTED WITHOUT LEAVE TO AMEND.**
- Request for injunctive relief be **GRANTED WITHOUT LEAVE TO AMEND**.

## <u>CONCLUSION</u>

For the foregoing reasons, **IT IS HEREBY RECOMMENDED** that the District Court issue an order: (1) approving and adopting this Report and Recommendation, (2) granting Defendants' Motions to Dismiss.

**IT IS HEREBY ORDERED** that any written objections to this Report must be filed with the Court and served on all parties **no later than <u>December 11, 2017</u>**. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with this Court and served on all parties **no later than <u>January 2, 2018</u>**. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on

17cv560-BAS (BLM)

1  appeal of the Court's order.  <u>See</u> <u>Turner v. Duncan</u>, 158 F.3d 449, 455 (9th Cir. 1998).

2  **IT IS SO ORDERED**.

3  Dated:  11/21/2017

4  Hon. Barbara L. Major
   United States Magistrate Judge

17cv560-BAS (BLM)